852 F.2d 569
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Odis L. WARD, Plaintiff-Appellant,
v.
UNITED INTER-MOUNTAIN TELEPHONE COMPANY and Communications
Workers of America, Defendants-Appellees.
 No. 87-5665.
 United States Court of Appeals, Sixth Circuit.
 July 22, 1988.
 
 Before ENGEL, DAVID A. NELSON and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is a hybrid action under Sec. 301 of the Labor-Management Relations Act, 29 U.S.C. Sec. 185. Plaintiff alleged that his employer, the United Inter-Mountain Telephone Company, violated its collective bargaining agreement when it failed to promote him to a vacant position, and that his union, the Communication Workers of America violated its duty of fair representation when it failed to arbitrate his grievance. The district court granted summary judgment to defendants, and plaintiff appeals. We find no genuine issue of material fact, and we shall affirm the judgment as correct on the law.
 
 
 2
 The collective bargaining agreement provided that
 
 
 3
 "[e]mployees bidding [for job vacancies] will be considered based on seniority, qualifications, fitness and profitability. Where qualifications and fitness are substantially equal, and such move is deemed profitable, seniority shall prevail."
 
 
 4
 The collective bargaining agreement further provided that employees interested in applying for vacant positions were to submit written job bids along with outlines of their experience, training, and other pertinent qualifications.
 
 
 5
 In December of 1983 the company authorized the union to post notices of 31 openings in positions classified as "Combination Cable Splicer and Installer-Repairworker." All of the positions were identical except for location. The company received many more bids in response to this posting than there were positions available. In determining whom to select, the company analyzed the applicants' qualifications on the basis of information provided by the bidders and information contained in the bidders' personnel files. The company devised the following five-level qualification system for use in evaluating the work experience of each individual:
 
 
 6
 QUALIFICATION DESCRIPTION
 NUMBER
--------------- --------------------------------------------------------------
 1. The employee has satisfactorily performed as both a Cable
 Splicer and an InstallerRepairworker or as a Combination
 Cable Splicer and InstallerRepairworker.
 2. The employee has satisfactorily performed as both a Cable
 Helper and an InstallerRepairworker. The employee has also
 satisfactorily completed the appropriate schools relating to
 cable that have been taught since 1972.
 3. The employee has satisfactorily performed as a Cable Splicer,
 but not as an InstallerRepairworker.
 4. The employee has satisfactorily performed as an
 InstallerRepairworker, but not as a Cable Splicer.
 5. The employee has a satisfactory work history, but not as
 either a Cable Splicer or an InstallerRepairworker, but may
 have satisfactorily performed as a Cable Helper.
 
 
 7
 Under the selection system, all bidders were first categorized by their work experience and then were ranked by seniority within each category.
 
 
 8
 Plaintiff applied unsuccessfully for six of the posted positions. He claims that he ought to have received position # 1700, located in Johnson City, Tennessee, based on his seniority of 16 years and on a letter from Mitchell Roshto, East Tennessee director of the union. In this letter, Roshto informed plaintiff that
 
 
 9
 "I have designated you as the employee who should have been selected on Job Bid 1700-JC. The employee selected by the Company on this bid was Ray White (9/17/72), whom the Company admits only has C.S. experience and no I.R. experience."
 
 
 10
 Although plaintiff had 16 years' seniority with the company, he was placed in qualification category # 5 because he had no experience with the company as either a cable splicer or installer-repairworker and did not otherwise qualify for a higher ranking. He claims that the company ought to have considered his years of cable-splicing experience in the Navy. The company discounts the present value of that experience because 80 percent of the electromechanical equipment with which plaintiff was familiar has since been replaced with digital equipment. Plaintiff also claims that he has attended all training schools except the cable-splicing school.
 
 
 11
 Ray White, the successful bidder, had only ten and one-half years' seniority with the company, but he was placed in qualification category # 3 because he was actually working as a cable splicer and had previously worked as a cable splicer helper. (According to plaintiff, White was sent to installation school after being selected for the position # 1700. Plaintiff contends that this shows that White was not more qualified than plaintiff and is evidence of pretext on the company's part.)
 
 
 12
 After the bidding results for the 31 positions were announced, plaintiff and nine other dissatisfied applicants filed grievances. Upon completion of the fourth stage of the grievance procedure, the union informed plaintiff that his grievance had been approved for arbitration and that the union was considering whether to arbitrate or settle.
 
 
 13
 A month later the union advised plaintiff that the grievances, including his, had been settled. The settlement agreement provided that grievants with installer-repairworker experience (# 4 on the matrix) would be given combination splicer-installer-repairman jobs as additional positions in this category become available, but that the grievances of those individuals ranked # 5, including plaintiff, would be dismissed.
 
 
 14
 Plaintiff subsequently instituted this Sec. 301 action. The district court disposed of it in favor of the defendants, granting the defendants' motion for summary judgment.
 
 
 15
 The success of a Sec. 301 claim depends upon proof that the union violated its duty of fair representation and that the employer violated the contract. See Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570-71 (1976). A breach of the union's duty occurs when the union fails to represent all members of a bargaining unit fairly and acts in a way that is "arbitrary, discriminatory or in bad faith." Vaca v. Sipes, 386 U.S. 171, 177 (1967). Bad faith or fraud is not a necessary element of an unfair representation charge if the union's conduct has been otherwise arbitrary or perfunctory. See Rudzicka v. General Motors Corp., 523 F.2d 306, 309-10 (6th Cir.1975). "Gross mistake" or "inaction which has no rational explanation" may constitute a breach of the duty. Poole v. Budd Co., 706 F.2d 181, 184 (6th Cir.1981). Mere negligence or error in judgment is not enough. Hines v. Anchor Motor Freight, Inc., 424 U.S. at 571. Courts have permitted unions a wide range of reasonable conduct, and, it is clear, unions are not obliged to process every grievance to arbitration. See Vaca v. Sipes, supra, 386 U.S. at 191. A "union has broad discretion to adjust the demands of competing groups within its constituency as long as it does not act arbitrarily." Jones v. Trans World Airlines, Inc., 495 F.2d 790, 798 (2d Cir.1974), citing Humphrey v. Moore, 375 U.S. 335, 343, 349-50 (1964). That a union chooses to settle a grievance without notifying the grievant beforehand may be insensitive and impolitic, but it is not a breach of the duty of fair representation. See, e.g., Perry v. Chrysler Corp., 101 LRRM 2681 (E.D.Mich.1978); Washington-Baltimore Newspaper Guild, 239 NLRB 1321, 1322, 100 LRRM 1179 (1979).
 
 
 16
 In the case at bar the union reasonably exercised its discretion to settle the grievances of plaintiff and others rather than to arbitrate them. Plaintiff has raised no genuine issue as to any fact or facts that would demonstrate that the union's handling of his grievance was arbitrary. The union's behavior was simply not the sort of invidious or unreasonable conduct that is actionable under Sec. 301.
 
 
 17
 Even if we were to find the union's actions improper, moreover, plaintiff's claim would fail because he has been unable to show that the company violated the collective bargaining agreement. Under the agreement, the company has the right to base its hiring decisions upon seniority, qualifications, fitness and profitability. The agreement further provides that "where qualifications and fitness are substantially equal and such move is deemed profitable, seniority shall prevail." Plaintiff's bare allegations of breach of contract are insufficient to raise a question of material fact concerning the company's performance under the agreement.
 
 
 18
 The judgment is AFFIRMED.